**COMMONWEALTH of Pennsylvania,**
**Appellant,**

v.

**Tamira Marie CHAPMAN, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 18, 2000.
Filed Nov. 30, 2000.

Michelle Olshefski, Asst. Dist. Atty., Wilkes-Barre, for Com., appellant.

William Ruzzo, Asst. Public Defender, Wilkes-Barre, for appellee.

BEFORE: POPOVICH, FORD ELLIOTT and BROSKY, JJ.

BROSKY, J.

¶ 1 This is an appeal from the order entered by the Court of Common Pleas of Luzerne County, on November 16, 1999, precluding the admission of certain evidence of prior bad acts, proffered by the Appellant, Commonwealth in the prosecution of Appellee, Tamira Marie Chapman. We affirm in part, reverse in part and remand for further proceedings.

¶ 2 Tragically, in the early morning hours of February 14, 1999, Chapman's two-year-old daughter, Dominique Thomas, drowned in a bathtub. Chapman had left her child in the care of an acquaintance, Joseph Tice.[1] Following an investigation, Tice and Chapman were each charged with involuntary manslaughter, recklessly endangering another person, and endangering the welfare of children.[2]

¶ 3 Prior to Chapman's trial, the Commonwealth gave notice of its intent to introduce evidence of other crimes, wrongs or acts committed by Chapman, under Pa.

1. The affidavit of probable cause alleges that Tice had been left to care for Chapman's children (Dominique age 2½, and her brother, Rashawn Pedlar, 1½), and four children (ages 9, 5, 2 and 8 months) of Chapman's friend, Cordilliyah Colway, at Colway's house. Chapman and Colway left their children with Tice between 8:00 and 9:00 p.m. and went to Chapman's house to do Colway's hair. Chapman and Colway returned to Colway's house around 11:00 p.m. and then went out drinking around midnight with two unidentified men, leaving Tice to babysit the six children. Chapman's 15 year old brother visited Colway's house around midnight and Tice smoked marijuana with him. At this point Dominique and the eight-month-old were upstairs asleep, and the other children were playing in the living room. Around 1:30 a.m. all but the nine-year-old child had gone to sleep, and he was playing Nintendo with Chapman's brother in the living room.

Tice and Chapman's brother had fallen asleep in the living room, when the nine-year-old awoke Tice because Dominique was crying and asking for a bath. The nine-year-old filled the bathtub, helped her undress and get into the tub, and then left her unattended. The nine-year-old checked on Dominique a few minutes later and she was playing in the tub with some toys. He left again and when he returned minutes later he found Dominique under the water, unresponsive. The nine-year-old again had to awaken Tice, who found Dominique in the tub. Tice then ran to the police station to report the incident to the police. Police arrived at the Colway house around 3:10 a.m., discovered the child in the tub, and attempted C.P.R. to no avail. The child was pronounced dead at Mercy Hospital Wilkes Barre at 3:50 a.m. The coroner determined the cause of death as drowning. Affidavit of Probable Cause in support of Police Criminal Complaint, 3/23/99, Certified Docket Entry 1.

2. 18 Pa.C.S.A. §§ 2504, 2705, and 4304, respectively.

R.E. 404(b), to which Chapman objected. The Commonwealth intended to introduce evidence that Chapman had continuously and repeatedly placed her daughter in the care of unapproved and inappropriate caretakers, in violation of a prior court order requiring court approval of such caretakers; that Chapman abused drugs and alcohol; that Chapman refused to co-operate with a parenting program arranged by Luzerne County Children and Youth Services; that Chapman maintained contact with a man named Darius Pedlar despite his history of violent and abusive behavior toward her and the existence of a prior Protection from Abuse Order against him; that Chapman previously had left her children in the care of Tice; that Chapman believed that Tice was "no good," and that she believed that Children and Youth Services had found him to be an unfit parent and had taken custody of his children away from him; that Chapman had previously paid Tice for his babysitting services with marijuana instead of money; and that Tice had in the past smoked marijuana in the presence of Chapman's children. The Commonwealth alleged further that all of this evidence was proffered to establish Chapman's intent and her state of mind, as proof that her actions were reckless and/or grossly negligent. Appellant's Brief at 5–6.

¶ 4 A hearing was held by the trial court, the Honorable Ann H. Lokuta presiding, on September 27, 1999. Subsequently, on November 16, 1999 the court issued an order and opinion sustaining Chapman's objections to all of the proffered evidence. The Commonwealth certified that the order terminated or substantially handicapped the prosecution,[3] and the Commonwealth filed the instant timely appeal.

¶ 5 The Commonwealth raises one issue on appeal, namely whether the trial court abused its discretion in excluding the Com-monwealth's proffered evidence of Chapman's prior bad acts, where that evidence is offered to show Chapman's intent. Appellant's Brief at 4.

¶ 6 Pa.R.E. 404(b), adopted May 8, 1998, effective October 1, 1998 provides:

(b) Other Crimes, Wrongs, or Acts

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

(2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

(4) In criminal cases, the prosecution shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of any such evidence it intends to introduce at trial.

¶ 7 Prior to the adoption of the Pennsylvania Rules of Evidence these principles were embodied in our decisional law.

Evidence of prior bad acts are generally not admissible if offered merely to show bad character or a propensity for committing bad acts. Exceptions to this general proscription exist in special circumstances where the evidence is relevant for some other legitimate purpose and not merely designed to prejudice the defendant by showing him to be a person of bad character.

*Commonwealth v. Richter*, 551 Pa. 507, 512, 711 A.2d 464, 466 (1998)(citing *Com-*

---

**3.** See *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985), and Pa.R.A.P. 311(d), 904(e).

*monwealth v. Simmons,* 541 Pa. 211, 240, 662 A.2d 621, 635 (1995) *cert. denied, Simmons v. Pennsylvania,* 516 U.S. 1128, 116 S.Ct. 945, 133 L.Ed.2d 870 (1996)).[4] "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Commonwealth v. Minerd,* 562 Pa. 46, 54–56, 753 A.2d 225, 230 (2000) (citations omitted).

¶ 8 We next examine the elements of the crimes Chapman is accused of committing. First, Chapman is charged with involuntary manslaughter, 18 Pa.C.S.A. § 2504, which states that:

> (a) General rule.—A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.
>
> (b) Grading.—Involuntary manslaughter is a misdemeanor of the first degree. Where the victim is under 12 years of age and is in the care, custody or

control of the person who caused the death, involuntary manslaughter is a felony of the second degree.

¶ 9 Thus, the Commonwealth must prove that Chapman acted in a reckless or grossly negligent manner which conduct was directly and substantially linked to the victim's death. *Commonwealth v. Moyer,* 436 Pa.Super. 442, 648 A.2d 42 (1994). In order to sustain a charge of involuntary manslaughter, the Commonwealth must show that the appellant's conduct was directly and substantially linked to the victim's death. *Commonwealth v. Long,* [425 Pa.Super. 170] 624 A.2d 200 (Pa.Super.1993). We have determined that in order to sustain a conviction for involuntary manslaughter, a defendant's conduct must be the antecedent but-for which the result in question would not have occurred. *Id.* Specifically, it would be unfair to hold an individual responsible for the death of another if his actions are remote or attenuated and the victim's death was attributable to other factors. *Id.*

*Moyer,* 648 A.2d at 46.[5]

¶ 10 Next Chapman is charged with recklessly endangering another per-

---

**4.** Because of the potential to create misunderstanding on the part of the jury, evidence of prior bad acts must be accompanied by a cautionary instruction explaining to the jury the limited purpose for which the evidence is admitted. *Commonwealth v. Barger,* 743 A.2d 477, 481 (Pa.Super.1999).

**5.** Causal relationship is further defined by 18 Pa.C.S.A. § 303 as follows:

(a) General rule.—Conduct is the cause of a result when:

(1) it is an antecedent but for which the result in question would not have occurred; and

(2) the relationship between the conduct and result satisfies any additional causal requirements imposed by this title or by the law defining the offense.

(b) Divergence between result designed or contemplated and actual result.—When intentionally or knowingly causing a particular result is an element of an offense, the element is not established if the actual result is not within the intent or the contemplation of the actor unless:

(1) the actual result differs from that designed or contemplated as the case may be, only in the respect that a different person or different property is injured or affected or that the injury or harm designed or contemplated would have been more serious or more extensive than that caused; or

(2) the actual result involves the same kind of injury or harm as that designed or contemplated and is not too remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of his offense.

(c) Divergence between probable and actual result.-When recklessly or negligently causing a particular result is an element of an offense, the element is not established if the actual result is not within the risk of which the actor is aware or, in the case of negligence, of which he should be aware unless:

(1) the actual result differs from the probable result only in the respect that a different person or different property is injured or affected or that the probable

son in violation of 18 Pa.C.S.A. § 2705, which provides that a person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury. "The *mens rea* required for this crime is a conscious disregard of a known risk of death or great bodily harm to another person. Acts of commission or omission by parents towards their children may create a substantial risk of death or great bodily injury." *Commonwealth v. Cottam*, 420 Pa.Super. 311, 342–44, 616 A.2d 988, 1004 (1992), *appeal denied*, 535 Pa. 673, 636 A.2d 632 (1993) (citations omitted).

¶ 11 Acting recklessly and negligently, are defined by 18 Pa.C.S.A. § 302(b)(3) and (4), respectively, as follows:

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

(4) A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a

injury or harm would have been more serious or more extensive than that caused; or
(2) the actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence to have a bearing on the liability of the actor or on the gravity of his offense.

gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

■■■ ¶ 12 Finally, Chapman is charged with endangering the welfare of children under 18 Pa.C.S.A. § 4304, which is defined as follows:

(a) Offense defined.—A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

(b) Grading.—An offense under this section constitutes a misdemeanor of the first degree. However, where there is a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree.

¶ 13 *Commonwealth v. Pahel*, 456 Pa.Super. 159, 689 A.2d 963 (1997) instructs that:

To establish a violation of Section 4304 requires proof that: 1) the accused is aware of his/her duty to protect the child; 2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and 3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare. *Commonwealth v. Cardwell*, [357 Pa.Super. 38, 45–47] 515 A.2d 311, 315 (Pa.Super.1986).

*Pahel*, 689 A.2d at 964. "The *mens rea* required for this crime is a knowing violation of a duty of care." *Cottam*, 616 A.2d at 1005 (citation omitted).

(d) Absolute liability.—When causing a particular result is a material element of an offense for which absolute liability is imposed by law, the element is not established unless the actual result is a probable consequence of the conduct of the actor.

¶ 14 In *Commonwealth v. Miller*, 411 Pa.Super. 33, 600 A.2d 988 (1992) in evaluating a challenge to the sufficiency of the evidence under § 4304, we held:

> Utilizing a common sense of the community approach to interpret the specific intent element of the statute, we find an implicit recognition that parents at times can make mistakes in judgment and that their children may be harmed as a result. However, *for such mistakes to rise to the level of criminal culpability, parents must knowingly allow their children to be at risk with awareness of the potential consequences of their actions or of their failure to act.*

*Id.* at 991 (emphasis supplied). A person acts *knowingly* with respect to a material element of an offense when:

> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
>
> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. § 302(b).

¶ 15 Turning to the specifics of the Commonwealth's appeal, we first note our well-settled standard of review:

> [A]n appellate court may reverse a trial court's ruling regarding the admissibility of evidence only upon a showing that the trial court abused its discretion. Because the trial court indicated the reason for its decision ..., our scope of review is limited to an examination of the stated reason.

*Minerd,* 753 A.2d at 229 (2000) (citations omitted). We must also be mindful that "a discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion." *Commonwealth v. Cohen,* 529 Pa. 552, 563, 605 A.2d 1212, 1218 (1992) (citation omitted).

¶ 16 The Commonwealth argues that all of the evidence excluded by the trial court was relevant and admissible to show Chapman's state of mind and/or intent. Appellant's Brief at 9. The trial court however, reasoned that there were three basic flaws running through the Commonwealth's arguments as to each of the items proffered. First, that the Commonwealth has not alleged that any of the prior uncharged conduct of Chapman resulted in any harm. Second, that the Commonwealth failed to assert the existence of certain underlying facts, which the Commonwealth is required to prove in order to permit the admission of the requested prior bad acts; and thirdly, that the Commonwealth "wholly failed to express why these acts are anything other than mere character evidence designed simply to show that Ms. Chapman is, generally, a bad person." Trial Court Opinion, 11/16/99, at 3–4.[6]

---

6. The trial court quotes the following passage from *U.S. v. Himelwright,* 42 F.3d 777, (3d Cir.1994) a case arising out of the middle district of Pennsylvania applying F.R.E. 404, as support for the considerations a trial court must weigh when applying Pa.R.E. 404:

> Despite our characterization of Rule 404(b) as a rule of admissibility, we have expressed our concern that, although the proponents of Rule 404(b) evidence "will hardly admit it, the reasons proffered to admit prior act evidence may often be potemkin village, because the motive, we suspect, is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character." Thus, when evidence of prior bad acts is offered, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged. .

*Id.* at 781–782 (citations omitted). Trial Court Opinion, 11/16/99, at 4. *Himelwright* is also instructive for the proposition that "when deciding whether to admit 'other acts' evidence under Rule 404(b), a trial court initially must consider two issues: first, whether the evidence is logically relevant, under Rules 404(b) and Rule 402, to any issue other than the defendant's propensity to commit the crime; and second, whether under Rule 403 the probative value of the evidence outweighs its prejudicial effect." *Id.* at 781.

¶ 17 The trial court further explained the standard it applied as follows:

A thorough review of Rule 404 mandates that the party offering the prior bad acts, in this case the government, clearly articulates that the prior bad acts are not being offered as merely character evidence, i.e. to show that the individual is a bad person and should be convicted not because she is guilty, but because she is a bad person. Rather the government must clearly articulate that the requested prior bad acts help to establish a legitimate issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The Court must review the proffered prior bad acts applying these standards.

Trial Court Opinion, 11/16/99, at 5.

¶ 18 With this background discussion in mind, and in keeping with our deferential standard of review, we now examine each item of evidence proffered by the Commonwealth in its notice, in light of the trial court's stated reasons for exclusion.

### 1. Chapman's prior drug use.

¶ 19 The first item of which the Commonwealth complains is the exclusion of evidence of Chapman's prior drug use. Appellant's Brief at 12. The Commonwealth's Notice of Intent to Offer Evidence states, "5.) Further, the Defendant continued to use and abuse drugs and alcohol. Such use of drugs and alcohol being criminal acts in and of themselves." *Id.* at 2. The Commonwealth argues that this evidence was "relevant to establish that [Chapman] acted recklessly or grossly negligently." Appellant's Brief at 12.

¶ 20 The trial court explained its ruling as follows:

The government, however, fails to allege how this evidence would make it more likely that Ms. Chapman had committed the charged offense. It is the government's burden to connect the relationship between the purported prior bad acts and the charged offense. The heart of Rule 404 in [sic] precisely aimed at excluding evidence of this nature unless the party offering such evidence can specifically tie it to the charged conduct.

\* \* \*

The government, again, wholly fails to present any reason why the requested evidence is anything other than mere character evidence. The government's position is a blatant attempt to convict Ms. Chapman not because she is guilty of the charged conduct, but because she is, generally, a bad person.

The government has failed to make an adequate showing pursuant to Rule 404.

Trial Court Opinion, 11/16/99, at 4, 7.

¶ 21 Upon review of the trial court's stated reasons, we cannot conclude that the trial court abused its discretion.

### 2. Violation of court orders.

¶ 22 The Commonwealth seeks to introduce evidence that Chapman violated a court ordered parenting program. The Commonwealth's Notice stated:

4.) The course of conduct engaged in by [Chapman] repeatedly and continuously violated a December 5, 1997 court order of the Honorable Mark Ciavarella. The violations included, inter alia, [Chapman] repeatedly and continuously placing her children in the custody and care of unapproved and inappropriate caretakers. Several of the caretakers were known to [Chapman] as drug users and as having criminal backgrounds.

Commonwealth's Notice of Intent to Offer Evidence, at 1. The Commonwealth argues that this evidence of these violations was relevant to establish that "[Chapman] acted knowingly, recklessly, or negligently with regard to the care of her child . . . ." Appellant's Brief at 13.

¶ 23 The trial court explained that it found it most curious that the government failed to allege whether any efforts were made to enforce the court's order through

contempt proceedings, if the acts now alleged were true. The court also found that the Commonwealth failed to present any reason why the requested evidence is anything other than mere character evidence, and that the Commonwealth failed to allege that there was any actual harm to any child on any such prior occasion. Again the court found that the Commonwealth failed to make an adequate showing for the admission of the evidence under Rule 404. Trial Court Opinion, 11/16/99, at 6. It is evident that the court was concerned with how these allegations of prior violations, which were not established as having in fact occurred, had anything to do with the events that occurred on February 13 and 14, 1999. Essentially, the trial court found that the Commonwealth failed to lay a proper foundation for the admission of this evidence. After reviewing the trial court's stated reasons, we cannot conclude that the trial court abused its discretion.

### 3. Chapman's Non-cooperation with Parenting Program.

¶ 24 The next proffer of prior bad acts is Chapman's alleged failure to cooperate with a court ordered parenting program. "5.) ... [Chapman] refused to comply and/or cooperate with the parenting program arranged for her by Luzerne County Children and Youth Services." Commonwealth's Notice of Intent to Offer Evidence, at 2.

¶ 25 The trial court found it significant that the Commonwealth did not allege whether Chapman was required to attend the parenting program pursuant to a court order, and if so why contempt proceedings were not initiated against her if the allegations were true. The court states that the Commonwealth "fails to tie this alleged conduct to the charged offense," that the Commonwealth again is attempting to convict Chapman not because of her conduct, but because she is generally a bad person, and that the Commonwealth has failed to

make an adequate showing under Pa.R.E. 404. Trial Court Opinion, 11/16/99, at 7–8. Once again we cannot conclude that the court abused its discretion.

### 4. Chapman's Contact with Darius Pedlar.

¶ 26 The next item proffered by the Commonwealth is evidence that "5.) ... [Chapman] continuously violated the terms and conditions of a Protection From Abuse Order granted by the Court on November 28, 1997 by maintaining contact with the named individual on that Order known to Children and Youth Services as Darius Peddlar or "B"." Commonwealth's Notice of Intent to Offer Evidence, at 2. The Commonwealth argues that Chapman's repeated contact with this individual,[7] despite the existence of a protection order and his past history of violence toward her "showed a reckless disregard for the safety and well being of her child," and that this recklessness "tended to establish [Chapman's] intent as required by the statutes." Appellant's Brief at 14. The trial court notes again that the Commonwealth fails to allege whether contempt proceedings were brought, and that the Commonwealth "fails to argue that this contact is somehow tied into the charged conduct. Again, as presented by the government, these prior bad acts amount to mere character evidence," and that the Commonwealth failed to make an adequate showing under Rule 404. Trial Court Opinion, 11/16/99, at 8–9. Our review of the trial court's stated reasons reveals no abuse of discretion.

### 5. Joseph Tice previously babysat for Chapman's child.

¶ 27 The Commonwealth sought to offer that "6.) ... Ms. Krepich [an acquaintance of Chapman] will testify that there were times when [Chapman] would leave her children in the custody and care of Joseph Tice." Commonwealth's Notice of Intent to Offer Evidence, at 2. The

7. Darius Peddlar is the father of Chapman's younger child, Rashawn Peddlar.

Commonwealth argues that this evidence when combined with Chapman's knowledge and belief that Tice was an unfit parent, shows a "knowing, reckless, and/or grossly negligent breach of her duty to care for her child," and is therefore admissible. Appellant's Brief at 14. The trial court explained that it denied the request because the Commonwealth "fails to argue that any such prior babysitting by Joseph Tice makes any element of the charged conduct more likely," and that the Commonwealth failed to make an adequate showing pursuant to Rule 404. Trial Court Opinion, 11/16/99, at 9. Once again the court is looking to the fact that the Commonwealth has not laid a proper foundation to make this evidence relevant. Our review does not reveal an abuse of discretion.

6. Unfitness of Joseph Tice as a Parent.

¶ 28 Next the Commonwealth proffered that:

> 7.) Ms. Krepich will testify that [Chapman] told her that she did not like Joseph Tice and that she thought he was "no good." In fact, during this specific time period, Ms. Krepich witnessed a confrontation between [Chapman] and Jospeh Tice at the home of Cordilliyaah Cowlay's house at 21 Ashley St. Ms. Krepich reports that during the confrontation, Mr. Tice mentioned his children and [Chapman] responded to Mr. Tice by saying that he did not have his own children because he was unfit and that's why Children and Youth had them.

Commonwealth's Notice of Intent to Offer Evidence, at 2.

¶ 29 The trial court in excluding this evidence ruled that the Commonwealth "failed to allege the necessary prerequisite to the admissibility of the evidence, *i.e.* that Children and Youth had, in fact, taken away Joseph Tice's children from him because Children and Youth had, in fact, determined that Joseph Tice was an unfit parent and the basis for its decision." Trial Court Opinion, 11/16/99, at 10. The court goes on to recognize that, if true, this evidence might be admissible for the purpose of establishing Chapman's state of mind, however, the court concludes that the Commonwealth failed to lay the necessary foundation for its admission. *Id.* at 10–11. Thus the court primarily concerns itself with whether the underlying facts regarding Tice's parenting is true, before it will consider whether to allow evidence of what Chapman knew or believed on the day that her daughter was left in Tice's care.

¶ 30 We find this reasoning to be in error. For purposes of showing Chapman's state of mind, or in this case what she may have believed to be true about Tice's parenting skills, it is not necessary to first prove that Tice had in fact had his children removed by Children and Youth. The focus in this analysis is what the defendant believed to be true, so as to establish her state of mind, not what was in fact true at the time. Even if Tice had not had his children removed, and Chapman believed it to be true, that fact would be relevant to evaluate the reasonableness of Chapman's subsequent actions with that knowledge, true or untrue, in mind. Certainly, the defense can attempt to show that the underlying facts were not true and that Chapman was mistaken in her belief, but her belief is what is relevant to the charges, not whether Tice was in fact a bad parent. Thus, as to this point of evidence we hold that the court abused its discretion, and we must reverse.

7. Joseph Tice's Use of Marijuana.

¶ 31 The last item proffered by the Commonwealth is:

> 9.) Ms. Krepich also reports that during this time period, [Chapman] asked her [Krepich] to pay Mr. Tice for watching her children. However, [Chapman] asked Ms. Krepich to pay Mr. Tice with marijuana rather than money. Ms. Krepich will testify that she did do this on at least two occasions and that the marijua-

na was provided to Mr. Tice prior to her and [Chapman] going out. Ms. Krepich stated that Mr. Tice smoked the marijuana in front of them and then she and [Chapman] would then go out and leave the Chapman children with Mr. Tice. On both of these occasions when Mr. Tice smoked the marijuana, the children were present in the house. Ms. Krepich reports that this situation most recently occurred approximately two weeks prior to February 14, 1999.

Commonwealth's Notice of Intent to Offer Evidence, at 2–3. The Commonwealth argues that this evidence similarly goes to establish what Chapman's state of mind (knowledge) was when she made the decision to let Tice care for her children. The court again acknowledged that it could imagine several scenarios where admission of this evidence would be supported, but ruled nevertheless that the Commonwealth "wholly failed to argue that there is any reasonable connection between any purported use of marihuana by Joseph Tice and the death of Dominique Thomas." Trial Court Opinion, 11/16/99, at 12. Much like the last issue, the trial court is concerned with whether the underlying conduct, *i.e.* Tice's alleged use of marijuana had anything at all to do with the victim's death on February 14, 1999. However, the focus in these crimes is on what Chapman's state of mind was at the time the decision to entrust her children with Tice was made, not whether the underlying allegations are true. We find the court's stated reasons erroneous. Therefore, we hold that the court abused its discretion and reverse on this point of evidence.

¶ 32 Affirmed in part, reversed in part and remanded to the trial court for further proceedings. Jurisdiction relinquished.

¶ 33 Affirmed in part, reversed in part.