J-S26010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES HAINES | |
| Appellant | No. 147 EDA 2015 |

Appeal from the Judgment of Sentence July 8, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005834-2012

BEFORE:  OLSON, STABILE and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                         **FILED MAY 04, 2016**

Appellant, James Haines, appeals from the judgment of sentence entered on July 8, 2013, as made final by the denial of his post-sentence motion on November 12, 2013.  We affirm.

The trial court made the following findings of fact:

> In the early morning hours of March 11, 2012, [Appellant] and Pedro Rosado (Rosado) were at an after-hours club called Passions.  As [Appellant] and Rosado were exiting the club that morning around 6:00 [a.m.], the security guards stopped them and told them to wait, because there were allegedly people in the parking lot that had weapons.  Eventually the guards let them leave, and [Appellant] and Rosado were seen getting into a red Dodge Challenger.  Rosado got into the driver's side of the vehicle, and [Appellant] got into the passenger's side of the vehicle.  [Appellant], who had a black semi-automatic handgun in his hand, stuck his hand out the window of the vehicle, and fired shots into the air.[1]   After witnessing the shots fired by

---

[1] At trial, the Commonwealth presented evidence that Appellant did not fire the gun into the air, but instead fired the gun towards the security guards.
*(Footnote Continued Next Page)*

---

* Retired Senior Judge assigned to the Superior Court

[Appellant], the club's security guards returned fire in the direction of the Challenger. [Appellant] and Rosado then exited the parking lot and drove off in the red Dodge Challenger.

On that same morning, Officer Kenneth Fazio was on patrol and, around 6:00 [a.m.], when he heard gunshots, he proceeded to the 3500 block of Kensington Avenue. Officer Fazio observed a Dodge Challenger parked in the running lane, and approached the vehicle. As the officer approached, he observed bullet holes in the vehicle and [Appellant] screaming, "Help me, help me!" Inside the vehicle, Officer Fazio observed Rosado in the passenger seat, with blood all over the vehicle. Rosado was transported by police to Temple University Hospital, where he was pronounced dead at 7:06 [a.m.]

[Appellant] was then taken to the Homicide Unit, where he made a statement to Detective [James] Crone. In the statement [Appellant] indicated that, as he and Rosado were exiting the club the security guards told him that someone was in the parking lot with a weapon. At this point both men went to Rosado's vehicle and got inside. [Appellant] then stuck his hand out of the passenger side window and shot the gun multiple times. He stated that he fired the gun because he was scared and was, "trying to scare the men away." [Appellant] then heard gunfire returned. At that point [Appellant] noticed that Rosado, who was driving the vehicle, was shot. He slid him over to the passenger side of the vehicle and began to drive the car

_(Footnote Continued)_ ——————————

N.T., 5/9/13, at 69-70, 130-131. The Appellant, however, gave a statement to Detective James Crone of the Philadelphia Homicide Unit that he "fired a couple of rounds in the sky trying to scare the men away." N.T., 4/29/13, at 118. Based upon its Rule 1925(a) opinion, it is evident that the trial court found Appellant's statement on this issue more credible than the testimony proffered by the Commonwealth's witnesses. Nonetheless, the trial court determined that Appellant's actions constituted involuntary manslaughter. When the trial court makes factual determinations after a bench trial relating to the evidence presented at trial, we are bound by those factual determinations as long as they are supported by the record. **_See Commonwealth v. Decker_**, 698 A.2d 99, 100 (Pa. Super. 1997), _appeal denied_, 705 A.2d 1304 (Pa. 1998) (citation omitted). As the trial court's factual finding in this regard is supported by the record, we proceed with that being considered the evidence viewed in the light most favorable to the Commonwealth.

down Kensington Avenue. At this point the car would no longer continue driving and stopped. As he did this he noticed the officer approaching the vehicle and he told the officer that Rosado was inside the vehicle and needed help.

Trial Court Opinion, 5/20/15, at 2-3 (internal citations omitted).

The procedural history of this case is as follows. On May 25, 2012, Appellant was charged via criminal information with involuntary manslaughter,[2] possession of a firearm by a prohibited person,[3] carrying a firearm without a license,[4] carrying a firearm on the streets of Philadelphia,[5] possessing an instrument of crime,[6] and three counts of recklessly endangering another person.[7] At the conclusion of a bench trial, on May 10, 2013, the trial court found Appellant not guilty of two counts of recklessly endangering another person and guilty of the six remaining counts. On July 8, 2013, Appellant was sentenced to an aggregate term of 7½ to 16 years'

---

[2] 18 Pa.C.S.A. § 2504(a).

[3] 18 Pa.C.S.A. § 6105(a)(1).

[4] 18 Pa.C.S.A. § 6106(a)(1).

[5] 18 Pa.C.S.A. § 6108.

[6] 18 Pa.C.S.A. § 907(a).

[7] 18 Pa.C.S.A. § 2705.

imprisonment.[8]  On July 15, 2013, Appellant filed a post-sentence motion. On November 12, 2013, the trial court denied the post-sentence motion.

On August 28, 2014, Appellant, through counsel, filed a petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  On December 19, 2014, the PCRA court granted Appellant's PCRA petition and reinstated his direct appellate rights *nunc pro tunc*.  This appeal followed.[9]

Appellant presents two issues for our review:

1. Did the evidence at trial fail to sufficiently demonstrate that Appellant's actions caused [Rosado]'s death?

2. Did the [trial] court impose an unduly harsh and excessive sentence by imposing consecutive terms of imprisonment on numerous convictions?

Appellant's Brief at 8.

In his first issue, Appellant argues that the evidence was insufficient to find him guilty of involuntary manslaughter.  "Whether sufficient evidence

---

[8] The aggregate sentencing included two to five years for involuntary manslaughter, one to two years for possession of a firearm by a prohibited person, 42 to 84 months for carrying a firearm without a license, and one to two years for recklessly endangering another person.  The carrying a firearm on the streets of Philadelphia charge merged with the carrying a firearm without a license charge and the possessing an instrument of crime sentence was ordered to run concurrently with the possession of a firearm by a prohibited person sentence.

[9] On December 30, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal (concise statement).  **See** Pa.R.A.P. 1925(b).  On January 20, 2015, Appellant filed his concise statement.  On May 20, 2015, the trial court issued its Rule 1925(a) opinion. Both issues raised by Appellant were included in his concise statement.

exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Tejada***, 107 A.3d 788, 792 (Pa. Super. 2015), *appeal denied*, 119 A.3d 351 (Pa. 2015) (citation omitted). In reviewing a sufficiency of the evidence claim, we must determine whether "viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Gonzalez***, 109 A.3d 711, 716 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1198 (Pa. 2015) (internal alteration and citation omitted). "The evidence does not need to disprove every possibility of innocence, and doubts as to guilt, the credibility of witnesses, and the weight of the evidence are for the fact-finder to decide." ***Commonwealth v. Forrey***, 108 A.3d 895, 897 (Pa. Super. 2015) (citation omitted).

In order to sustain a conviction for involuntary manslaughter, the Commonwealth must prove beyond a reasonable doubt "1) a mental state of either recklessness or gross negligence, and 2) a causal nexus between the conduct of the accused and the death of the victim." ***Commonwealth v. Fabian,*** 60 A.3d 146, 151 (Pa. Super. 2013), *appeal denied*, 69 A.3d 600 (Pa. 2013) (internal alteration, quotation marks, and citation omitted). Appellant argues that the Commonwealth failed to prove the second element

of involuntary manslaughter, *i.e.*, that there was a causal nexus between his actions and Rosado's death.

This Court conducts a two-part inquiry to determine if there were a causal nexus between a defendant's actions and a victim's death. "[A] defendant's conduct must be the antecedent but-for which the result in question would not have occurred. Specifically, it would be unfair to hold an individual responsible for the death of another if his actions are remote or attenuated and the victim's death was attributable to other factors." **Commonwealth v. Chapman**, 763 A.2d 895, 899 (Pa. Super. 2000), *appeal denied*, 771 A.2d 1278 (Pa. 2001) (internal citations omitted). The second part of this test "is satisfied when the victim's death is the natural or foreseeable consequence of the defendant's actions. The inquiry is often addressed in terms of foreseeability. Moreover, the fatal result of a defendant's conduct is not rendered unforeseeable merely because the precise agency of death could not have been foretold." **Commonwealth v. Devine**, 26 A.3d 1139, 1148 (Pa. Super. 2011).

In this case, the first part of the test is satisfied. Appellant's actions were the antecedent but-for which Rosado would not be deceased. Armed security guards would not open fire on a vehicle for no reason. Instead, the armed security guards only opened fire on the vehicle occupied by Appellant and Rosado because Appellant fired his weapon out of the window of the vehicle.

The second part of the test is also satisfied. It was foreseeable that either the armed security guards, or the individuals that Appellant believed to be armed in the parking lot, would fire on the vehicle occupied by Appellant and Rosado once Appellant opened fire. It would be difficult for the armed security guards at the Passions after-hours club to determine why, or toward what direction, Appellant fired his weapon. Instead, the only information that the armed security guards had was that Appellant opened fire within range of their position and within range of other, possibly armed, individuals. The natural and foreseeable reaction to an individual who opens fire in a public area is for an armed security guard to return fire.

The facts in the case at bar are similar to those in *Commonwealth v. Nunn*, 947 A.2d 756 (Pa. Super. 2008), *appeal denied*, 960 A.2d 838 (Pa. 2008). In *Nunn*, police officers investigating a robbery confronted the defendant who "reached under his shirt, drew a gun, and pointed it at [a police officer]." *Id.* at 759. Police returned fire, injuring the defendant and killing an innocent bystander. *Id.* The defendant was later convicted of involuntary manslaughter. On appeal, he challenged the sufficiency of the evidence supporting his conviction, arguing that he could not foresee that his actions would cause the innocent bystander's death. This Court affirmed the involuntary manslaughter conviction and found that there was sufficient evidence of causation. Specifically, this Court held that "[d]espite knowing that [the victim] and her daughter were present, [the defendant] chose to

ignore the police commands, pull out his weapon, and point it at [a police officer], thereby drawing police fire." *Id.* at 761.

Like *Nunn*, where the defendant was aware of the presence of armed officers and his proximity to innocent bystanders, Appellant here knew there were armed security guards present,[10] as well as individuals in the parking lot that were believed to be armed. Appellant also knew that Rosado was seated next to him. Despite these circumstances, Appellant chose to fire his weapon out of the vehicle that he and Rosado occupied. As noted above, the reasonable, and foreseeable, reaction of an armed security guard to an individual opening fire is to immediately return fire. As in *Nunn*, we find the evidence in this case sufficient to sustain Appellant's conviction for involuntary manslaughter.

We also find instructive this Court's decision in *Commonwealth v. Lang*, 426 A.2d 691 (Pa. Super. 1981). In *Lang*, the defendant led police on a high speed chase. During that chase, one of the pursing officers crashed and died as a result of his injuries. The Commonwealth charged the

---

[10] The evidence presented at trial established that two of the security guards, Kelly Goldwire and Kenneth Sharper, were armed and that their firearms were visible. N.T., 5/9/13, at 47-48. Terrence Garrett, a third security guard, testified that Appellant saw the firearms on the guards as he exited the club and he commented on one of the guns and said he would pay whatever amount of money to buy it. *Id.* at 54. Thus, the evidence of record supports the finding that Appellant knew that some of the security guards were armed at the time he fired his gun out of the car window.

defendant with vehicular homicide[11] and the trial court granted the defendant's *habeas corpus* petition. This Court reversed, concluding that the facts alleged by the Commonwealth were sufficient to prove criminal causation. Specifically, this Court explained that the police officer

> was duty bound to pursue [defendant], which duty arguably became more compelling with each Vehicle Code violation. In a sense, [the pursuing officer] was bound as if by a chain to [the defendant's] vehicle; and, at the speed [the defendant] was travelling, it was foreseeable the chain would break, hurtling [the pursuing officer] to his death.

*Id.* at 695 (footnote omitted).

As in *Lang*, the armed security guards at the nightclub were duty bound to protect individuals inside and outside of the club, along with themselves. Appellant was aware of this fact, and that the armed security guards took their jobs seriously. As Appellant and Rosado exited the club, the armed security guards made them wait because of armed individuals in the parking lot. The armed security guards carried out their duty by returning fire once Appellant opened fire from his vehicle. The natural and foreseeable consequences of Appellant's actions were that he and/or Rosado would be shot.

---

[11] Although *Lang* arose in the context of vehicular homicide, this Court has relied upon *Lang* when discussing the foreseeability requirement for an involuntary manslaughter conviction. *See Commonwealth v. Rementer*, 598 A.2d 1300, 1307 (Pa. Super. 1991), *appeal denied*, 617 A.2d 1273 (Pa. 1992).

Appellant analogizes the case at bar to **Commonwealth v. Colvin**, 489 A.2d 1378 (Pa. Super. 1985). In **Colvin**, the defendant was convicted of involuntary manslaughter after he threw a stone at the victim's house. A resident then informed the victim that someone threw a stone at the house. The victim, upon hearing this news, collapsed and died of a heart attack. This Court reversed the involuntary manslaughter conviction, holding that "the noise caused by the stone was not heard by the [victim]. The stone caused property damage and the noise frightened [the other resident], and there the direct causal relationship ends." **Id.** at 1380. In other words, this Court found that the defendant's action was not the direct result of the victim's death.

As noted above, the causal relationship between Appellant's actions and Rosado's death is direct. As soon as Appellant opened fire from the vehicle, the armed security guards returned fire in the vehicle's direction. These shots resulted in Rosado's death. Thus, **Colvin** is inapposite and we perceive no factual or legal impediment to our conclusion that the Commonwealth proved both elements of causation. Accordingly, we conclude that the evidence was sufficient to find Appellant guilty of involuntary manslaughter.

In his second issue, Appellant argues that his sentence is excessive. This issue challenges the discretionary aspects of Appellant's sentence. **See Commonwealth v. Haynes**, 125 A.3d 800, 806 (Pa. Super. 2015).

Pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court has explained, in order to reach the merits of a discretionary aspects claim,

> [w]e conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa. Super. 2015) (citation omitted). Appellant filed a timely notice of appeal, preserved the issue in his post-sentence motion, and included a Rule 2119(f) statement in his appellate brief. Thus, we turn to whether Appellant has raised a substantial question.

"In order to establish a substantial question, the appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process." *Commonwealth v. Treadway*, 104 A.3d 597, 599 (Pa. Super. 2014) (citation omitted). "The determination of whether a particular case raises a substantial question is to be evaluated on a case-by-case basis."

- 11 -

*Commonwealth v. Seagraves*, 103 A.3d 839, 841 (Pa. Super. 2014), *appeal denied*, 116 A.3d 604 (Pa. 2015) (citation omitted).

In his Rule 2119(f) statement, Appellant argues that this appeal presents a substantial question because the trial court failed to consider his rehabilitative needs and imposed consecutive sentences. This Court has held that a "challenge to the imposition of [] consecutive sentences as unduly excessive, together with [a] claim that the [trial] court failed to consider [the defendant's] rehabilitative needs upon fashioning its sentence, presents a substantial question." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*), *appeal denied*, 126 A.3d 1282 (Pa. 2015). As Appellant raises such a claim, we conclude that he has raised a substantial question and proceed to consider the merits of Appellant's discretionary aspects claim.

Pursuant to statute,

the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b). Furthermore, when sentencing a defendant, the trial court is required to consider the sentencing guidelines. *See Commonwealth v. Tobin*, 89 A.3d 663, 669 n.4 (Pa. Super. 2014) (citation omitted). In this case, Appellant was sentenced within the sentencing guidelines. Accordingly, we may only vacate his sentence if this "case

involves circumstances where the application of the guidelines would be clearly unreasonable[.]" 42 Pa.C.S.A. § 9781(c)(2).

Appellant first contends that the trial court failed to meaningfully consider mitigating factors. Specifically, he argues that the trial court did not consider the changes he had undergone while imprisoned. As Appellant notes, when imposing a sentence a trial court is required to state "the reasons for the sentence. The court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under [s]ection 9721(b). However, the record as a whole must reflect due consideration by the court of the statutory considerations [enunciated in that section]." Appellant's Brief at 22 (second alteration in original), *quoting* ***Commonwealth v. Feucht***, 955 A.2d 377, 383 (Pa. Super. 2008), *appeal denied*, 963 A.2d 467 (Pa. 2008). The record reflects that the trial court considered the relevant statutory factors.

At sentencing, the trial court explicitly stated that it had carefully reviewed the pre-sentence investigation report (and demonstrated such knowledge by recalling specific portions of the report). N.T., 7/8/13, at 32-33. The trial court also explicitly stated that it considered Appellant's sister's comments at the sentencing hearing, the arguments made by Appellant's counsel, and Appellant's allocution. ***Id.*** at 33. The mitigating factor relied upon by Appellant, the changes he had undergone while imprisoned, were supported by his sister's statement to the trial court along with his

- 13 -

allocution. The trial court explicitly considered this evidence at sentencing. Furthermore, as noted above a pre-sentence investigation report was completed and reviewed by the trial court prior to sentencing. When a trial court has access to a pre-sentence investigation report, it is presumed that it "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988). As such, we conclude that the trial court properly considered all mitigating factors.

Second, Appellant argues that the consecutive nature of the sentences was unwarranted. The general rule in this Commonwealth, however, is that trial courts have the discretion to order sentences to run consecutively. ***See Commonwealth v. Swope***, 123 A.3d 333, 341 (Pa. Super. 2015) (citation omitted) ("Appellant is not entitled to a volume discount for his crimes."); ***Commonwealth v. Zirkle***, 107 A.3d 127, 134 (Pa. Super. 2014), *appeal denied*, 117 A.3d 297 (Pa. 2015). We ascertain no abuse of discretion in the trial court's decision to run four of Appellant's sentences consecutively.

Appellant's unlawful behavior not only cost Rosado his life, but it also endangered the lives of all surrounding the incident. The shots fired by Appellant could have easily struck an innocent person strolling the streets of Philadelphia and the return fire by the armed security guards could have easily killed a bystander in the parking lot in addition to Rosado. Appellant had two prior firearms convictions in another jurisdiction and yet continued

to carry an unlicensed firearm on the streets of Philadelphia – violating three statutes merely with his possession of the firearm. In such circumstances, the trial court found that a sentence of 7½ to 16 years' imprisonment was appropriate and we ascertain no abuse of discretion in this conclusion. Accordingly, Appellant is not entitled to relief on his discretionary sentencing challenge.

Judgment of sentence affirmed.

Judge Stabile joins this memorandum.

Judge Strassburger concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/2016