489 A.2d 1378

**COMMONWEALTH of Pennsylvania**

v.

**John R. COLVIN, Appellant.**

Superior Court of Pennsylvania.

Argued July 31, 1984.

Filed Feb. 22, 1985.

Reargument Denied April 19, 1985.

---

Joseph A. Massa, Jr., Public Defender, Warren, for appellant.

Richard A. Hernan, Jr., District Attorney, Warren, for Commonwealth, appellee.

Before ROWLEY, DEL SOLE and MONTGOMERY, JJ.

DEL SOLE, Judge:

On August 21, 1981, the Appellant threw a stone through a window at the residence owned and occupied by Charles and Donna Adams and in which Elizabeth and Frederick R. Adams, their children also resided. That stone broke the window and caused damage of some minor amount to the residence.

Subsequently, on August 28, 1981, at approximately 1:20 a.m. Charles and Donna Adams were asleep in their bedroom, Elizabeth Adams was in the bathroom and Frederick R. Adams was in the den watching television. At that time the Appellant threw another stone at the house, striking the side of the house making a noise which Frederick Adams heard but which no one else in the household heard. Frederick Adams then proceeded to the second floor to inform his family that someone had thrown a stone again at the house, waking his mother and father and calling this event to the attention of his sister.

Mrs. Donna Adams entered the hallway of the second floor to ask what happened and was told that someone had thrown a stone at the house. Upon hearing this news, she collapsed and died. As a result of these events, the Appellant was charged with two counts of criminal mischief and one count of involuntary manslaughter.

Following a non-jury trial, the Appellant was found guilty of both counts of criminal mischief and involuntary manslaughter and subsequently sentenced on the involuntary manslaughter charge to a period of incarceration of one to two years. It is from the sentence on the charge of involuntary manslaughter that the Appellant appeals.

The question simply stated is whether or not a person can be convicted of involuntary manslaughter when he commits a criminal act, and another person dies after being told that the act was committed. We think not.

■ First, we note that although the Appellant filed written post trial motions in boiler plate form, the motions were filed before *Commonwealth v. Holmes*, 315 Pa.Super. 256,

461 A.2d 1268 (1983) and therefore the issues are properly preserved for Appellate review.

The trial court in its opinion sets forth the operative statute as 18 Pa.C.S.A. § 2504 which defines involuntary manslaughter:

"(a) General Rule. A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person."

██ The statute requires that the death be a *direct* result of the act of the defendant. In the instant case, it was clearly established that the act of throwing the stone and the noise that it caused were not heard or reacted to by the decedent. The testimony of Charles Adams, husband of the decedent, as found on pages 31 through 34 of the notes of testimony reveals that neither he nor his wife heard the noise since they were both asleep. Further, Mrs. Adams was still asleep when Mr. Adams heard his son coming up the stairs excitedly advising what happened. The testimony of Elizabeth Adams, the daughter, as found on pages 25 through 27 of the notes of testimony reveals that she did not hear the noise even though she was awake and in the bathroom on the second floor. She first became aware of the incident when she heard her brother call out that someone had thrown a stone.

Frederick R. Adams testified on pages 9 and 10 of the record that he ran up the stairs screaming, met his father in the hall and told him what happened and then told his mother what happened. Following that, Mrs. Donna Adams collapsed and died.

A seminal case dealing with the issue before us is *Commonwealth v. Root*, 403 Pa. 571, 170 A.2d 310 (1961). Therein, the Supreme Court of Pennsylvania reversed the conviction for involuntary manslaughter for one of two participants in "drag race" when the co-racer was killed as a result of a collision between his vehicle and an on-coming

truck. The court, speaking through Mr. Chief Justice Jones stated as follows:

> "While precedent is to be found for application of the tort law concept of 'proximate cause' in fixing responsibility for criminal homicide the want of any rational basis for its use in determining criminal liability can no longer be properly disregarded. When proximate cause was first borrowed from the field of tort law and applied to homicide prosecutions in Pennsylvania, the concept noted as much more direct causal relation in producing the alleged culpable result than it does today. Proximate cause, as an essential element of a tort founded in negligence, has undergone in recent times, and still undergoing, a marked extension ... To persist in applying the tort liability concept of proximate cause to prosecutions for criminal homicide after the marked expansion of civil liability of defendants in tort actions for negligence would be to extend possible *criminal* liability to persons chargeable with unlawful or reckless conduct in circumstances not generally considered to present the likelihood of a resultant death." *Commonwealth v. Root, supra,* 403 Pa. at 574–575, 170 A.2d at 311.

Thus, the Supreme Court has specifically rejected a "proximate cause" analysis for involuntary manslaughter and rather relies upon the statute's "direct cause" concept.

The prosecution's reliance on *Commonwealth v. Youngkin,* 285 Pa.Super. 417, 427 A.2d 1356 is, in our judgment, misplaced. In the *Youngkin* case, the defendant's conviction of involuntary manslaughter was sustained. In that case the defendant, a physician, had recklessly and in a grossly negligent manner prescribed medication to one Barbara Fedder, a seventeen year old patient, which medication was a barbiturate. As a result of ingesting the medication while at a party, Miss Fedder died of asphyxiation from aspiration of the contents of her stomach due to the depression of her gag reflex. The depression of her gag reflex was caused by the medication she was taking. Therefore, in the *Youngkin* case, the action of the defendant, namely,

prescribing a medication which the deceased ingested, was directly linked to the death.

Reference is also made to the case of *Commonwealth v. Skufca*, 457 Pa. 124, 321 A.2d 889 (1974). Therein, a mother was convicted of involuntary manslaughter as the result of the deaths of her children. The mother had left her two children aged 3 years and 10 months home alone unattended and had wedged shut their bedroom door so that they could not leave the room. As a result, when a fire occurred, the children were not able to escape nor was help able to reach them and they perished. Here again, we have action by the accused that directly caused the deaths of the victims.

In the case at bar, the noise caused by the stone was not heard by the decedent. The stone caused property damage and the noise frightened Frederick Adams, and there the direct causal relationship ends.

█ Further, it is our view that the evidence is not sufficient to sustain a conviction in this case. The court below relied upon the testimony of Dr. Dickinson Lipphard, which is set forth in the trial court's opinion as follows:

"On the information given to me as to what happened at the home, that the subject died of fright or some other intense emotion, whether it was fright or fear or just excitement, some intense emotional state was the cause of death."

The trial court further points out that the factual history relied on by Dr. Lipphard was given to him by the coroner. Unfortunately, the factual history given to Dr. Lipphard upon which he bases his conclusion was incorrect. On page 60 of the notes of testimony, Dr. Lipphard testified as follows:

"Q. What specific facts—

A. What did they tell me?

Q. Yes.

A. Oh, they told me that somebody had thrown a rock through a window of a house where this—where the

deceased was living, and that she had already retired, and they said the sound of this woke her up..."

Also, and on page 61 he gave testimony given as follows:

"Q. So, I understand this correctly, without trying to repeat your words, you say that you were told a rock was thrown through a window at this person's home—

A. Un-huh.

Q. —and she was asleep—

A. Yes.

Q. —did the noise caused by the rock awaken her—

A. Yes.

Q. —in bed?

A. Right"

Dr. Lipphard's assumed facts are not in keeping with the testimony of Mr. Adams and Frederick and Elizabeth Adams all of whom testified that Mrs. Adams was not awakened by the noise caused by the throwing of the rock. Since the underlying facts giving rise to Dr. Lipphard's opinion have not been established in the record the Commonwealth has failed in meeting its burden of proof in this case. Even Dr. Lipphard admits that the death of Mrs. Adams was most unusual. (N.T. 62)

Our review of the record leads us to conclude that the conviction on the charge of involuntary manslaughter is against the weight of the evidence and is contrary to law.

Appellant was also convicted of two counts of criminal mischief, which convictions will stand. We therefore remand this case for resentencing on the two counts of criminal mischief.

Judgment of Sentence of Involuntary Manslaughter is vacated.

Jurisdiction relinquished.