615 A.2d 802

**COMMONWEALTH of Pennsylvania**

v.

**James S. CHEATHAM, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 17, 1992.

Filed Nov. 10, 1992.

604

Wendell G. Freeland, Pittsburgh, for appellant.

Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before ROWLEY, President Judge, and CIRILLO and MONTGOMERY, JJ.

CIRILLO, Judge.

James S. Cheatham appeals from a judgment of sentence entered by the Court of Common Pleas of Allegheny County after his conviction in a non-jury trial on charges of homicide by vehicle and aggravated assault.[1] We affirm.

On August 3, 1990, Cheatham blacked out while driving on Whitaker Street in the Borough of West Mifflin and lost control of his car. The car left the eastbound lane, jumped the curb, and ran into three children sitting on a fence, killing one child and injuring the other two. There were no tire skid marks before the car hit the fence. Cheatham was found lying across the front seat of the car after the accident. He was described as "dazed" and "swaying" when he stood up.

Cheatham has a history of seizure disorder dating to October, 1988, for which he had been treated at Allegheny General Hospital since January, 1989. He was treated first with dilantin and then Tegretol and, finally, phenobarbital, to control seizures which he told his physician occurred as often as once a day without medication. While receiving medication Cheatham reported to his treating physician that he had seizures once a month.

Cheatham's last reported seizure before the accident occurred on April 15, 1990, three and one-half months prior to the incident. Cheatham's treating physician, Dr. Rehka Pawar, testified that, prior to the accident, she had not seen Cheatham since April 19, 1990, but that his prescription for phenobarbital had been renewed by telephone. Dr. Pawar testified that Cheatham had missed some appointments with her, but she did not specify when. She also testified that she was "not sure that all the medications were being taken regularly." She was not asked to elaborate. A blood test after the accident—the record is unclear as to exactly how

---

1. Cheatham was convicted of homicide by vehicle, 75 Pa.C.S. § 3732; involuntary manslaughter, 18 Pa.C.S. §§ 2501 and 2504; aggravated assault, 18 Pa.C.S. § 2702(a)(1); two counts of recklessly endangering another person, 18 Pa.C.S. § 2705; carrying a firearm without a license, 18 Pa.C.S. § 6106, and four summary violations of the Motor Vehicle Code. Only the convictions for homicide by vehicle and aggravated assault are at issue in this appeal.

many hours later—showed Cheatham had a level of phenobarbital in blood slightly under the therapeutic level.[2]

Cheatham's driver's license was recalled in early 1989. A physician at Allegheny General notified the Commonwealth of Pennsylvania, pursuant to 75 Pa.C.S. 1518(b),[3] on January 5, 1989, that Cheatham suffered from seizure disorder and Cheatham's license was recalled.[4] Both the physician and the state Department of Transportation notified Cheatham he was not entitled to drive; Cheatham himself complained before the accident to his treating physician about the recall of his license.

Cheatham raises two questions for our consideration:

1) Whether a seizure-induced blackout is criminal negligence within the standards of culpability applicable to homicide by motor vehicle;

2) Whether trial counsel was ineffective for stipulating that the injuries suffered by the victim of the aggravated assault charge were "serious bodily injuries."

■ The first question presented by this appeal is whether the evidence established a level of culpability sufficient to sustain a criminal conviction. In reviewing a challenge to the sufficiency of the evidence, this court must ask whether the evidence, and all reasonable inferences deducible therefrom,

**2.** A therapeutic level of phenobarbital is 15 to 40 milligrams per liter. His blood measured 14.47 milligrams per liter.

**3.** Section 1518(b) requires:
All physicians and other persons authorized to diagnose or treat disorders and disabilities defined by the Medical Advisory Board shall report to the department, in writing, the full name, date of birth and address of every person over 15 years of age diagnosed as having any specified disorder or disability within ten days.
Epilepsy is a disability defined at 67 Pa.Code 83.4:
A person suffering from epilepsy may not drive unless their personal licensed physician reports that the person has been free from seizure for a period of at least 1 year immediately preceding, with or without medication.

**4.** Section 1519(c) of the Motor Vehicle Code provides:
The department shall recall the operating privilege of any person whose incompetency has been established ... for an indefinite period.
75 Pa.C.S. § 1519(c).

viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offense beyond a reasonable doubt. *Commonwealth v. Thomas*, 527 Pa. 511, 513–14, 594 A.2d 300, 301 (1991).

Cheatham argues that a seizure-induced blackout is an involuntary act without the *mens rea* necessary to raise the conduct from negligent to grossly negligent as required for a criminal conviction under *Commonwealth v. Heck*, 517 Pa. 192, 201, 535 A.2d 575, 580 (1987).

The statute under which Cheatham was charged, homicide by vehicle, provides in relevant part:

Any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth ... is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the cause of death.

75 Pa.C.S. § 3732.

Cheatham was charged with violating section 1543(a) of the Motor Vehicle Code, operating a motor vehicle while his operating privileges were suspended.[5] On the face of it, the charges against Cheatham appear to satisfy the elements of the statute. His violation of the law, driving while his license was recalled, caused the death of Ryan Maszle. Our analysis, however, does not end here. We must go on to consider whether driving without a license supplies the requisite but-for causation link to find Cheatham guilty of a criminal charge. 75 Pa.C.S. § 3732. If we find that his violation of the law caused the death, then we must continue our analysis to determine whether the act which caused Ryan Maszle's death was sufficiently reckless to supply the *mens rea* necessary to justify a criminal conviction. Only if we establish both cause and the necessary mental state may we convict Cheatham of a

---

**5.** Section 1543(a) of the Motor Vehicle Code provides:

[A]ny person who drives a motor vehicle on any highway or trafficway of this Commonwealth after the commencement of a suspension, revocation or cancellation of the operation privilege and before the operating privilege has been restored is guilty of a summary offense
...

75 Pa.C.S. § 1543(a).

criminal charge. *See* 75 Pa.C.S. § 3732, *supra; see also* 18 Pa.C.S. § 302(a); *Heck, supra.*

With that standard in mind, we turn first to the statutory requirement that the violation of the law *cause* the death to impose culpability. We ask whether Cheatham's violation of the law, driving while his license was recalled, caused the death of seven-year-old Ryan Maszle.

Causation is an essential element of the offense of homicide,[6] which the Commonwealth must prove beyond a reasonable doubt. *Commonwealth v. Webb,* 449 Pa. 490, 296 A.2d 734 (1972). Tort theory of causation, the proximate cause, is insufficient to impose criminal responsibility. *Commonwealth v. Root,* 403 Pa. 571, 575, 170 A.2d 310, 311 (1961). In *Root,* the Pennsylvania Supreme Court held that participating in a drag race on a two-lane road was insufficient cause to convict one of the racers in the death of the other. Using tort principles of proximate cause to convict someone of a criminal charge is "too harsh to be just," the *Root* court held. *Id.,* 403 Pa. at 576, 170 A.2d at 312.

In *Commonwealth v. Rementer,* 410 Pa.Super. 9, 598 A.2d 1300 (1991), this court considered the problem of causation and held that criminal culpability requires a more direct causal connection than does tort liability. *Id.,* 410 Pa.Super. at 22, 598 A.2d at 1306 (citation omitted). The *Rementer* court defined a two-step analysis to find criminal culpability: first that the death would not have occurred but-for the antecedent act by the defendant and, second, that the fatal result not be so extraordinary, remote or attenuated that it would be unfair to hold the defendant criminally responsible for it. *Id.,* 410 Pa.Super. at 22–23, 598 A.2d at 1306. This court held in *Rementer:*

> [D]efendant's conduct must bear a direct and substantial relationship to the fatal result in order to impose criminal culpability. Put another way, if the fatal result was an unnatural or obscure consequence of the defendant's ac-

---

**6.** Criminal homicide, murder, voluntary and involuntary manslaughter, is defined as follows: A person is guilty of criminal homicide if he intentionally, knowingly, recklessly, or negligently causes the death of another human being. 18 Pa.C.S. § 2501(a).

tions, our sense of justice would prevent us from allowing the result to impact on the defendant's guilt.

*Id.*, 410 Pa.Super. at 22–23, 598 A.2d at 1306–07.

In *Rementer* a woman was killed when she was run over by a passing car while trying to escape an attacker. The court had no trouble finding the evidence sufficient to sustain the attacker's conviction for third-degree homicide. Causation in *Rementer* can be distinguished from that in *Commonwealth v. Colvin*, 340 Pa.Super. 278, 489 A.2d 1378 (1985) in which this court found there was insufficient evidence of causation to sustain an involuntary manslaughter conviction. *Colvin* involved two stone throwing incidents. In the first, a stone thrown at a house by an unknown miscreant broke a window. A week later, Colvin threw a stone which hit the house with a thump. A son in the family heard the thump and woke his parents to report it. On hearing the news the mother collapsed and died. Colvin was convicted of involuntary manslaughter. This court found no direct causal relationship between the act and the death and vacated the judgment of sentence.

Using those precepts, we turn to the instant case and ask whether Cheatham's act of driving while his license was recalled *caused* the death of Ryan Maszle.

The failure to have a valid driver's license does not meet the level of causation required by *Rementer, supra,* and *Root, supra.* To find causation we must look further, to the act of driving itself. There we find the violation of the law which rises to the level of criminal responsibility. Cheatham was barred from driving because he had not gone seizure-free for a year. Cheatham's illegal act, driving when he was not seizure-free, bears the direct and substantial relationship to the fatal result demanded by *Rementer, supra,* and *Root, supra.* When Cheatham had his seizure while driving it was not an unnatural or obscure result which would exempt him from criminal culpability. *Rementer, supra; Colvin, supra.* His

seizure was foreseeable and, perhaps, likely.[7]

Our next inquiry is directed to the mental element necessary to make a person criminally culpable for the fatal result which his acts cause, the *mens rea*. The framework in which to examine *mens rea* in homicide by vehicle is supplied by *Commonwealth v. Heck*, 517 Pa. 192, 535 A.2d 575 (1987). In *Heck*, the accused had turned left into the path of an oncoming motorcyclist who was killed in the collision. He was convicted of homicide by vehicle. When Heck turned left he did so in violation of the Motor Vehicle Code's requirement that a vehicle turning left yield to oncoming traffic. This court held that a statute imposing criminal liability for an act of simple negligence denied the defendant due process of law. *Commonwealth v. Heck*, 341 Pa.Super. 183, 491 A.2d 212 (1985).

The Pennsylvania Supreme Court rehabilitated the statute by adding a *mens rea* requirement to what is, on its face, a strict liability statute. *Heck*, 517 Pa. at 200, 535 A.2d at 579. The court held that "ordinary negligence will not sustain a conviction for the offense of homicide by vehicle. The applicable mens rea requirements of culpability are those enumerated in 18 Pa.C.S. § 302(a)." *Id.* Section 302(a) establishes four degrees of culpability: "intentionally, knowingly, recklessly or negligently as the law may require, with respect to each material element of the offense." 18 Pa.C.S. § 302(a). "Negligently" is intended to be criminal negligence which is defined as "a gross deviation from the standard of care that a reasonable person would observe." *Heck*, 517 Pa. at 201, 535 A.2d at 580.

The question becomes: Do the facts of the case at hand present a "gross deviation?" Cheatham asks us to frame the question as: Whether an epileptic seizure while driving constitutes a gross deviation. The Commonwealth, on the other

---

**7.** Cheatham's treating physician was asked if she was "trying to put enough phenobarbital in his system to make seizures unlikely?" She answered, "For some people you can't completely control the seizures. I was trying to cut down the seizures, not make it [sic] unlikely. That would be good if it was unlikely, but I was trying to control them ... [the purpose of the medication] was to control the seizures."

hand, asks whether driving when one knows or has reason to believe one is subject to seizures constitutes a gross deviation from the standard of care. For the reasons that follow, we believe the Commonwealth's formulation of the question is most appropriate.

An epileptic seizure while driving and an ensuing fatal accident is an example law school textbooks use to distinguish cases in which there is no criminal culpability from those in which there is criminal responsibility. *See* S. Kadish and S. Schulhofer, *Criminal Law and its Processes*, p. 195 (Little, Brown and Co. 1989). The case most often cited is *People v. Decina*, 2 N.Y.2d 133, 157 N.Y.S.2d 558, 138 N.E.2d 799 (1956). In that case, Decina killed four children when he lost control of his car during an epileptic seizure. The question before the *Decina* court was whether the evidence was sufficient to indict. Decina argued the state had no evidence of the *mens rea* required to indict for involuntary manslaughter. The New York court held that, assuming the truth of the indictment as it must on demurrer, Decina knew he was subject to epileptic seizures. That knowledge and the choice to drive, the court said, amounted to culpable negligence. The court distinguished Decina's behavior from that of a person for whom the seizure was unexpected. An unexpected attack, the court reasoned, is altogether different, suggesting a lack of criminal culpability. *Cf. Malcolm v. Patrick*, 147 So.2d 188, *cert. denied* 148 So.2d 278 (Fla.App.Div.1962) (tort liability depends on foreknowledge of epilepsy).

The defining difference between the epileptic who drives with the knowledge that he or she is seizure prone and the unsuspecting epileptic who drives is choice.[8] One chooses to take the risk; the other does not know he is taking the risk. The Pennsylvania Supreme Court defined criminal culpability in terms of choice in *Commonwealth v. Hicks*, 502 Pa. 344, 466 A.2d 613 (1983), as pertaining to drivers who know or should know that death is a probable consequence of their violations

---

**8.** Choice is the defining element of intent. B. Cardozo, *What Medicine Can Do for Law,* Law and Literature and other Essays and Addresses 99–100 (1931).

of the Motor Vehicle Code and who "should reasonably antici-pate that their conduct is likely to produce death."

In this case, Cheatham knew the frequency of his seizures even with medication, he knew that he had not had medical attention for three months, he knew that his seizures came on without warning, and he knew that the Commonwealth of Pennsylvania required that he be seizure-free for one year before being licensed to drive. Despite that knowledge, Cheatham chose to drive. That choice to drive raises Cheatham's conduct to the level of a gross deviation from the standard of care that a reasonable person would observe. 18 Pa.C.S. § 302(a); *Heck, supra.*

We find for the foregoing reasons that Cheatham's violation of the law, driving while his license was suspended, caused the death of Ryan Maszle and that Cheatham's disregard for the safety of others was sufficiently reckless and wanton to rise to the level of criminal culpability. 75 Pa.C.S. § 3732 *supra; Rementer, supra; Heck, supra.*

■ We turn now to Cheatham's second argument that he received ineffective assistance of counsel when counsel stipu-lated to the injuries received by Aaron Delandro. Cheatham argues on appeal this ineffective assistance caused him to receive a harsher sentence than he would have for an assault which did not cause serious bodily harm.

Our standard of review when evaluating a claim of ineffec-tive assistance of counsel is well settled, presumes that trial counsel is effective, and places on the defendant the burden of proving otherwise. *Commonwealth v. Williams,* 524 Pa. 218, 230, 570 A.2d 75, 81 (1990). We are first required to deter-mine whether the issue underlying the claim is of arguable merit. *Commonwealth v. Johnson,* 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991). If the claim is without merit, our inquiry ends because counsel will not be deemed ineffective for failing to pursue an issue which is without basis. *Id.* Even if the underlying claim has merit, the appellant still must establish that the course of action chosen by his counsel had no reason-able basis designed to effectuate the client's interests and,

finally, that the ineffectiveness prejudiced his right to a fair trial. *Id.; Commonwealth v. Durst,* 522 Pa. 2, 5, 559 A.2d 504, 505 (1989).

This court will not counter counsel's strategic decisions, made in the interests of his client, during trial so long as the strategy has a reasonable basis. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352–53 (1967). In this case, stipulating to the injuries to Aaron Delandro was clearly a trial strategy designed to lessen the emotional impact of testimony, a reasonable strategy under the facts of this case and one which we will not second guess. *Maroney, supra.*

Judgment of sentence affirmed.