J-S48025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAUN MYRICK | : | |
| | : | |
| Appellant | : | No. 1574 EDA 2018 |

Appeal from the PCRA Order May 11, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004215-2012

BEFORE: BOWES, J., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED NOVEMBER 12, 2019**

Appellant, Shaun Myrick, appeals *pro* se from the May 11, 2018 order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. We affirm the PCRA order but remand to the PCRA court for proceedings consistent with this Memorandum.

Appellant was convicted of repeatedly raping D.B. and committing involuntary deviate sexual intercourse and other crimes beginning when the child was ten years old. The PCRA court detailed the facts of the crimes in its Pa.R.A.P. 1925(a) opinion, and we will not repeat them here except to the extent it is necessary to our analysis of this case. The procedural history is as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

On March 19, 2013, a jury found [Appellant] guilty of rape (18 Pa.C.S. § 3121(a)(1);involuntary deviate sexual intercourse ("IDSI") (18 Pa.C.S. § 3123(a)(1); unlawful contact with a minor (18 Pa.C.S. § 6318(a)(1); aggravated indecent assault (18 Pa.C.S. § 3125(a)(1);endangering the welfare of children [("EWOC")] (18 Pa.C.S. § 4304(a)(1); and corruption of minors (18 Pa.C.S. § 6301(a)(1). On August 7, 2013, the trial court sentenced Appellant to an aggregate term of twenty to forty years' incarceration.[1]

[Appellant's] first appeal was filed on August 22, 2013. On April 20, 2015, the Superior Court of Pennsylvania affirmed [Appellant's] judgment of sentence. **See Commonwealth v. Myrick**, 121 A.3d 1136[, 2367 EDA 2013] (Pa. Super. [filed April 20,] 2015) (unpublished memorandum).

[Appellant] filed a *pro se* [PCRA] petition on April 20, 2016[, and counsel was appointed on August 8, 2016]. On July 26, 2017, [Appellant's] court-appointed counsel filed an amended petition. On March 2, 2018, the PCRA Court issued a dismissal notice under Rule 907. On May 11, 2018, the PCRA Court dismissed the Petition.

PCRA Court Opinion, 10/1/18, at 1–2.

Appellant filed a timely notice of appeal on May 18, 2018. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925. In the interim, on August 28, 2018, Appellant filed a motion to proceed *pro se*. The PCRA court held a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81

---

[1] After a hearing, the trial court determined that Appellant was a sexually violent predator ("SVP") pursuant to the Sexual Offender Registration and Notification Act ("SORNA"). **Commonwealth v. Myrick**, 121 A.3d 1136, 2367 EDA 2013 (Pa. Super. filed April 20, 2015) (unpublished memorandum at *1).

(Pa. 1998), on October 26, 2018,[2] and granted Appellant's motion. Order, 10/26/18.

Appellant raises the following issues on appeal:

1. Whether PCRA counsel was ineffective for failing to raise Appellant's original pro-se PCRA petition claim regarding, trial counsel was ineffective for failing to object to hearsay evidence under the confrontation clause[?]

2. Whether trial counsel was ineffective for failing to object to hearsay evidence, that resulted in a constitutional violation against Appellant under the Confrontation Clause[?]

3. Whether trial counsel was ineffective for failing to call witnesses who were willing and available to testify on behalf of Appellant[?]

4. Whether trial counsel was ineffective for entering into a stipulation[?]

5. Whether the PCRA court errored [sic] in dismissing Appellant's first PCRA, after Appellant established his PCRA counsel was ineffective for failing to raise his original claims[?]

Appellant's Brief at 6 (unnecessary capitalization omitted).

When reviewing the propriety of an order denying PCRA relief, this Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Robinson*, 139 A.3d 178, 185 (Pa. 2016). The PCRA court's findings will not be disturbed unless there is no support for them in the certified record. *Commonwealth v. Lippert*, 85 A.3d 1095, 1100 (Pa. Super.

---

[2] A representative of the Superior Court's Prothonotary sought a transcript from this hearing but was informed that the notes of testimony were never transcribed, and the court reporter is no longer available to do so.

2014). Moreover, we consider the record in the light most favorable to the prevailing party at the PCRA level. ***Commonwealth v. Mason***, 130 A.3d 601, 617 (Pa. 2015); ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*). Where there are allegations of ineffectiveness of counsel, as here, the claims alleged must have "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Commonwealth v. Cousar***, 154 A.3d 287, 296 (Pa. 2017); 42 Pa.C.S. § 9543(a)(2). In addition, a PCRA petitioner must show that the claims of error have not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). ***Commonwealth v. Blakeney***, 108 A.3d 739, 749 (Pa. 2014). "An issue has been waived 'if the petitioner could have raised it but failed to do so before trial, at trial, on appeal or in a prior state post conviction proceeding.'" 42 Pa.C.S. § 9544(b); ***Blakeney***, 108 A.3d at 749. The PCRA court's findings will not be disturbed unless there is no support for them in the certified record. ***Commonwealth v. Lippert***, 85 A.3d 1095, 1100 (Pa. Super. 2014).

Appellant's issues one, two, four, and five allege ineffective assistance of counsel relating to the admission of Department of Human Services ("DHS") records.[3] Appellant's Brief at 9, 10–11, 19–20. Appellant contends trial

---

[3] We note that due to Appellant's presentation of the issues in his brief, it is difficult to ascertain with precision and clarity the claims Appellant seeks to raise. We have stated:

counsel should have objected to the records as hearsay rather than stipulating to them. Appellant posits an undeveloped argument that PCRA counsel was ineffective for failing to raise Appellant's "original pro-se p.c.r.a. petition claim" that trial counsel was ineffective for failing to object to the admission of the DHS records as hearsay, thereby violating his right of confrontation. Appellant's Brief at 9. He subsequently expands this claim by asserting the PCRA court should have allowed him to file a supplemental petition challenging PCRA counsel's representation in this regard. *Id.* at 21.[4] Appellant suggests that trial counsel was ineffective "for failing to insure that an on-the-record colloquy was held by the [trial] court before acceptance of the stipulation . . . ." Appellant's Brief at 19. None of these claims are a basis for relief.

The PCRA court explained:

> The DHS reports contained, among other things, biological information, safety descriptions, dangers, and threats to

---

Although this Court is willing to construe liberally materials filed by a *pro se* litigant, a *pro se* appellant enjoys no special benefit. Accordingly, *pro se* litigants must comply with the procedural rules set forth in the Pennsylvania Rules of the Court. **Commonwealth v. Lyons**, 833 A.2d 245, 251–52 (Pa. Super. 2003). "This Court will not act as counsel and will not develop arguments on behalf of an appellant. **Coulter v. Ramsden**, 94 A.3d 1080, 1088 (Pa. Super. 2014)."

**Commonwealth v. Tchirkow**, 160 A.3d 798, 804 (Pa. Super. 2017).

[4] As PCRA counsel did raise the claim, Amended PCRA Petition, 7/26/17, at 13–17, there is no merit to Appellant's contention.

- 5 -

[Appellant's] children within 72 hours, conclusions regarding the extent of the abuse, a statement by the victim describing the abuse, and a letter to [Appellant] informing him that they had found substantial evidence of abuse. N.T. 3/18/13, 48-54.

It was reasonable for trial counsel to stipulate to this evidence. If trial counsel had refused to stipulate, the Commonwealth could have called the DHS social workers to testify as to exactly what was written in the reports. The testimony would have expanded upon the evidence. The stipulation lessened the impact of the evidence on the jury. *See Commonwealth v. Birdsong*, 24 A.3d 319, 335 (Pa. 2011) (where counsel "agreed to the facts contained in the police report, which would have been admitted in a manner far more prejudicial to the defense had he not done so . . . we cannot say such decision was without reasonable basis"); *Commonwealth v. Cheatham*, 615 A.2d 802, 807 (Pa. Super. 1992) ("stipulating...was clearly a trial strategy designed to lessen the emotional impact of testimony, a reasonable strategy under the facts of this case and one which we will not second guess").

The information from the DHS reports was contained in the Complainant's testimony describing her years of abuse. (N.T. 3/15/13, 40-70). The Complainant's testimony alone was sufficient to support the convictions. *See Commonwealth v. Jette*, 818 A.2d 533, 534 (Pa. Super. 2003) ("In the case of sexual offenses, the testimony of the victim alone is sufficient to convict, and medical evidence is not required if the fact finder believes the victim").

[Appellant] has "failed to establish that had trial counsel not stipulated to the report...the outcome of the case would have been different...." *Commonwealth v. Fletcher*, 986 A.2d 759, 789 (Pa. 2009). Since counsel had a reasonable basis to stipulate, and [Appellant] was not prejudiced by the stipulations, his claim fails.

[Appellant] also claims he also should have been colloquied regarding the stipulations. However, a colloquy is required only when a defendant stipulates to evidence that virtually assures his conviction. *See Commonwealth v. Davis*, 322 A.2d 103, 105 (Pa. 1974). "In Davis, our Supreme Court recognized that testimony entered by counsel's stipulation may be so damaging that admission of the stipulation at trial must be, surrounded by safeguards similar to those attending the entry of a guilty plea."

*Commonwealth v. Bridell*, 384 A.2d 942, 944 (Pa. Super. 1978). "*Davis*, however, does not require a trial court to conduct an on-record colloquy whenever defense counsel stipulates to evidence which is potentially damaging to his client.... The *Davis* decision relates only to a particular situation in which the stipulation involved is so damaging that it constitutes an admission of guilt." *Id.* (quoting *Commonwealth v. Overton*, 352 A.2d 106 (1975)). Essentially, the test is whether the stipulation in question makes "the outcome of the trial a foregone conclusion." *Id.* (quoting *Davis*, 322 A.2d at 105).

The only information in the DHS reports that directly inculpated [Appellant] came from the victim, who testified at trial and was subject to cross-examination. The stipulation did not assure [Appellant's] convictions and trial counsel's stipulation was simply a matter of trial strategy. No colloquy was required.

PCRA Court Opinion, 10/1/18, at 5–7. We agree with the PCRA court's analysis. DHS records were introduced merely to show the steps taken in the investigation of the case and to explain how Appellant's abuse of the victim, some of which occurred years earlier, had come to police attention. Accordingly, the PCRA court did not err in concluding that Appellant's ineffectiveness claim lacked arguable merit.

In his remaining issue, Appellant argues trial counsel was ineffective for failing to present testimony of two witnesses: the victim's brother, Hafiz Myrick, who was an adult when the abuse of D.B. began, and Appellant's friend, Lamont Walker. Appellant's Brief at 15–17.[5] According to Hafiz Myrick,

---

[5] While he makes no mention of it in his appellate brief, Appellant also attached an affidavit of Gail Myrick, Appellant's mother, to his amended PCRA petition. Amended PCRA Petition, 7/26/17, at Exhibit B. In that affidavit, Appellant's mother stated she observed Hafiz Myrick and Lamont Walker approach counsel at trial. ***Id.***

during Appellant's trial, he told Appellant's counsel that he was ready and willing to testify on Appellant's behalf. *Id.* at Exhibit A. Hafiz Myrick contended that he "never witnessed any improper contact between [Appellant] and [D.B.]," and he knew D.B. so well that he "would have known if she was upset or depressed." *Id.*

According to Lamont Walker, who also attended Appellant's trial, he was introduced to Appellant's counsel at that time. Amended PCRA Petition, 7/26/17, at Exhibit A. Walker asserts that he told counsel he was ready and willing to testify on Appellant's behalf, that Appellant had a "very strong and positive reputation for truthfulness and [for] being a loving and supportive father to his children." *Id.*

The PCRA court addressed this ineffectiveness claim as follows:

> [Appellant] alleges that Hafiz Myrick would have testified that he lived in the same house as [Appellant] and the victim and "never witnessed any improper contact," that he "never saw the victim depressed, afraid, or uncomfortable," that he was close with [D.B.] and "would have known if she was upset or depressed," that there "was no reason she would not have told me she was being abused," that he "never heard anything about these allegations until she ran away," and that their home was "loving and supportive." Appendix A of the Amended Petition, Affidavit of Hafiz Myrick; also see Commonwealth's Motion to Dismiss at 11.
>
> Hafiz Myrick's testimony would not have rebutted the Complainant's testimony about [Appellant's] sexual abuse. All of the abuse happened outside of Hafiz's presence, so his potential testimony that he would have known about any abuse and that the Complainant would have told him is irrelevant. The Complainant testified that she did not tell Hafiz Myrick about the abuse because "he was still [Appellant's] son. That's not a person

I would go to for that. I didn't think he would probably believe me anyway." (N.T. 3/15/13, 105).

[Appellant] also alleges that Lamont Walker would have testified that he knew [Appellant] for thirty years and that he lived with the family in 2011, that he had "never witnessed or known [sic] [Appellant] to ever participate in any violent acts or be a violent person," and that [Appellant] "has a very strong and positive reputation for truthfulness and being a loving and supportive father to his children." Appendix A of the Amended Petition, Affidavit of Lamont Walker; also see Commonwealth's Motion to Dismiss at 11-12.

Lamont Walker's testimony would not have altered the outcome of the trial or undermined the verdict in any way. *See Commonwealth v. Johnson*, 139 A.3d at 1284-85. Lamont Walker's potential [testimony] would not be able to speak to the specific instances of abuse and only concerned [Appellant's] reputation. *See Commonwealth v. Sneed*, 45 A.3d 1096, 1109 (Pa. 2012) ("Since the statements do not exculpate [Appellant]... [he] has not demonstrated prejudice. As such, counsel cannot be deemed ineffective, and the PCRA court did not err in denying this claim without a hearing").

PCRA Court Opinion, 10/1/18, at 8–9.

At trial, D.B. never testified that Hafiz Myrick or Lamont Walker or any other adult ever witnessed Appellant's sexual abuse of her. Indeed, her testimony indicated that the abuse occurred when she was alone with Appellant. **See**, **e.g.**, N.T., 3/15/13, at 74, 79–82). The only exceptions were an incident that occurred when Appellant's four-year old son, I.M., was asleep in the same bed and another incident when Appellant looked at D.B.'s and her younger sister's vaginas. **Id.** at 58–59, 92. As noted by the PCRA court, D.B. testified that she never told Hafiz Myrick about the abuse. Moreover, the prosecutor specifically explained in her opening statement that Appellant's

family appeared to be a happy, normal family; that Appellant did not act violently toward D.B.; and that D.B. loved Appellant. *Id.* at 18, 24. Thus, the fact that neither Hafiz Myrick nor Lamont Walker saw or knew of the abuse, would not have contradicted D.B.'s testimony or the Commonwealth's theory of the case.

To prevail on a claim of counsel's ineffectiveness for failure to call a witness, an appellant must prove: "(1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant." *Commonwealth v. Chmiel*, 889 A.2d 501, 545–546 (Pa. 2005) (citations omitted). Counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness's testimony would have been beneficial or helpful in establishing the asserted defense. *Id.*

Generally, evidence of a person's character may not be admitted to show the person acted in conformity with such character on a particular occasion. Pa.R.E. 404(a). In a criminal case, however, a defendant may offer evidence of his character traits that are pertinent to the crimes charged, and the Commonwealth may offer evidence to rebut the trait. Pa.R.E. 404(a)(2). Testimony must be about the defendant's reputation, not the witness's opinion of the character or character trait of the defendant. Pa.R.E. 405(a). "Such

evidence must relate to a period at or about the time the offense was committed, and must be established by testimony of witnesses as to the community opinion of the individual in question, not through specific acts or mere rumor." *Commonwealth v. Goodmond*, 190 A.3d 1197, 1201–1202 (Pa. Super. 2018).

Furthermore, with respect to character testimony in a case where there are only two direct witnesses involved:

> credibility of the witnesses is of paramount importance, and character evidence is critical to the jury's determination of credibility. Evidence of good character is substantive, not mere makeweight evidence, and may, in and of itself, create a reasonable doubt of guilt and, thus, require a verdict of not guilty.

*Commonwealth v. Hull*, 982 A.2d 1020, 1025–1026 (Pa. Super. 2009) (quoting *Commonwealth v. Weiss*, 606 A.2d at 442, 443 (Pa. 1992)). "Along these lines, we note that character testimony alone can be grounds for acquittal. Indeed, a defendant who presents character evidence is entitled to a jury instruction telling the jurors that evidence of good character may create a reasonable doubt, thus requiring a verdict of not guilty." *Commonwealth v. Hoover*, 16 A.3d 1148, 1151 (Pa. Super. 2011) (internal citation omitted).

With respect to the testimony of Hafiz Myrick, it is clear that he did not set forth admissible testimony in his affidavit. Hafiz Myrick offered to testify that Appellant would not have committed the crimes with which he was charged. Such testimony is not proper testimony for a character witness. *See Goodmond*. However, the testimony that Walker may have offered is not as

clear cut. Walker claimed that Appellant had a reputation in the community for truthfulness[6] and for being a loving and supportive father. Testimony about Appellant's reputation for being a loving father may have been admissible in this case. *See Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 782 n.6 (Pa. Super. 2015) (when a defendant is charged with EWOC, "a person's reputation as a good father may be pertinent to rebut a charge that the person abused children under his care"). Here, Appellant was charged and convicted of EWOC; thus, this testimony may have been admissible as substantive evidence.

_____

[6] Appellant's reputation for truthfulness was not admissible in this case.

> It has long been the law in Pennsylvania that a defendant in a criminal case may introduce evidence of his reputation for truthfulness in but two circumstances. First, the accused may introduce evidence of his truthful character if the trait of truthfulness is relevant to the crime with which he has been charged . . . . Second, the accused may introduce evidence of his truthful character if his reputation for truthfulness has first been attacked by the prosecution.

*Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). Appellant was not charged with any crimes of dishonesty nor did the Commonwealth present evidence showing Appellant lacked a reputation for truthfulness. *See* N.T., 3/18/13, at 80–92. Thus, Lamont Walker's affidavit statement that Appellant had a "positive reputation for truthfulness," would have been inadmissible. *See Commonwealth v. Minich*, 4 A.3d 1063, 1070 (Pa. Super. 2010) ("Character evidence of the defendant's truthfulness is admissible only if: (1) the character trait of truthfulness is implicated by the elements of the charged offenses; or (2) the defendant's character for truthfulness was attacked by evidence of bad reputation").

- 12 -

Nevertheless, Walker's affidavit reveals an obvious flaw. He admits he presented himself to Appellant's counsel for the first time during trial. Amended PCRA Petition, 7/26/17, at Exhibit A. Trial counsel could only be ineffective if he knew about Walker's availability in a timely fashion. It is unreasonable to expect defense counsel to present a witness that he did not have the opportunity to vet. Accordingly, this claim fails on this basis.[7] Thus, Appellant failed to meet his burden to prove that trial counsel was ineffective in failing to investigate and call the proffered witnesses, and the ineffectiveness claim lacked arguable merit. Therefore, we affirm Appellant's issues.

Due to recent case law, however, we elect to review the legality of Appellant's sentence as it relates to his SVP status. In *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017), petition for allowance of appeal granted, 190 A.3d 581, 47 WAL 2018 (Pa. filed 7/31/18), this Court concluded that because our Supreme Court held in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), that the registration requirements of SORNA are punitive, and an SVP designation may increase the registration period, trial courts cannot apply SORNA's increased registration requirement for SVPs because

_____

[7] In his appellate brief, Appellant also cursorily asserts that trial counsel was ineffective for failing to investigate witnesses. Appellant's Brief at 18. However, because Appellant did not present the claim in his PCRA petition, it is waived. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

SORNA does not require a fact-finder to determine beyond a reasonable doubt that the defendant is an SVP. *Butler*, 173 A.3d at 1217–1218 (citing *Alleyne v. United States*, 570 U.S. 99 (2013)). Therefore, *Butler* determined that the portion of SORNA that required a court to find a defendant to be an SVP by clear and convincing evidence, 42 Pa.C.S. § 9799.24(e)(3), was unconstitutional. *Commonwealth v. Golson*, 189 A.3d 994, 1003 (Pa. Super. 2018), (citing *Butler*, 173 A.3d at 1217–1218)[8].

Here, following an assessment by the Sexual Offender Assessment Board, the trial court imposed SVP status on Appellant on August 7, 2013. Appellant's SVP status carried a lifetime registration requirement. *See* 42 Pa.C.S. § 9799.15(a)(6). We affirmed Appellant's judgment of sentence on April 20, 2015, and Appellant did not seek further review. The United States Supreme Court had decided *Alleyne* on June 17, 2013, two months before Appellant's sentencing and designation as an SVP. Therefore, Appellant is

---

[8] In response to our Supreme Court's decision in *Muniz* and this Court's decision in *Butler*, the Pennsylvania General Assembly passed Acts 10 and 29 of 2018. The express purpose of both legislative enactments was to cure SORNA's constitutional defects. *See* 42 Pa.C.S. § 9799.51(b)(4) ("[I]t is the intention of the General Assembly to address [*Muniz* and *Butler*].") Specifically, our General Assembly modified Subchapter H's registration requirements for those offenders convicted of committing offenses occurring on or after SORNA's effective date, *i.e.*, December 20, 2012. Our General Assembly also added Subchapter I to Title 42, Part VII, Chapter 97. Subchapter I sets forth the registration requirements that apply to all offenders convicted of committing offenses on or after the effective date of Megan's Law I (April 22, 1996), but prior to SORNA's effective date.

entitled to vacation of his SVP designation because it resulted from an unconstitutional process. **Butler**, 173 A.3d at 1217–1218.

Accordingly, we affirm the order denying PCRA relief as to Appellant's claims presented, but we vacate Appellant's SVP status and remand to the common pleas court for the sole purpose of issuing the appropriate notice under 42 Pa.C.S. § 9799.23 as to Appellant's registration obligation. **Butler**, 173 A.3d 1218.

Order affirmed. SVP status vacated. Case remanded for the sole purpose of issuing appropriate notice under 42 Pa.C.S. § 9799.23 regarding Appellant's registration obligation. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/12/19