J-A26006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANDREW WAGONER :
:
Appellant : No. 492 WDA 2025

Appeal from the Judgment of Sentence Entered March 18, 2025
In the Court of Common Pleas of Allegheny County
Criminal Division at No:  CP-02-CR-0003891-2024

BEFORE:  OLSON, J., STABILE, J., and KING, J.

MEMORANDUM BY STABILE, J.: **FILED: February 26, 2026**

Appellant, Andrew Wagoner, appeals from his judgment of sentence of one year's probation for accidents involving death or personal injury while not properly licensed under 75 Pa.C.S.A. § 3742.1(a)(1).  Appellant argues that the evidence is insufficient to sustain his conviction for this offense due to the absence of criminal negligence.  We affirm.

The evidence adduced during trial establishes that on September 9, 2023, Matthew Gillespie was driving home from the Grocery Store on Cedar Avenue in Pittsburgh when Appellant's red SUV struck him from behind.  N.T., 3/18/25, at 9-10, 14.  Appellant's vehicle continued to drive past him into the oncoming lane and struck a Pittsburgh Police vehicle operated by Officer John Adams.  *Id.* at 14.  Officer Adams suffered severe whiplash and pain to his upper back and neck.  He remained off duty for three months due to these injuries and underwent five months of physical therapy.  *Id.* at 16.

Appellant was transported to Allegheny General Hospital for treatment and evaluation. Officer Nathan Powers, a drug recognition expert, interviewed Appellant and asked him to participate in a drug influence evaluation. Appellant agreed to participate. *Id.* at 20-21. Appellant told Officer Powers that he had six or seven prior seizure events in the past, though he had never been "officially diagnosed," and the last seizure episode took place six months before this accident. *Id.* at 21-22, 24. Following the evaluation, Officer Powers concluded that Appellant was not under the influence of any controlled substances, but he concluded that this was a "medical rule out," that is, the impairment he observed could be the result of a medical condition. *Id.* at 21, 23-24.

Sergeant Kevin Walters, an accident reconstruction officer and police supervisor, reviewed Appellant's Penn DOT driving record and discovered that on the date of the accident, Appellant's driving record was suspended for a previous DUI. *Id.* at 30.

On March 18, 2025, following a non-jury trial, the court found Appellant guilty of accidents involving death or personal injury while not properly licensed and other traffic offenses. On the same date, the court entered sentence. Appellant filed a timely appeal to this Court, and both Appellant and the court complied with Pa.R.A.P. 1925.

Appellant raises a single issue in this appeal, "Whether the evidence was insufficient to convict [Appellant] of Accidents Involving Death or Personal Injury While not Properly Licensed, where the Commonwealth failed to prove,

beyond a reasonable doubt, that he acted with a *mens rea* of at least negligence?"

In a challenge to the sufficiency of the evidence, our standard of review is

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered.  Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa. Super. 2019).

75 Pa.C.S.A. § 3742.1, entitled "Accidents involving death or personal injury while not properly licensed," has been amended multiple times since its enactment in 1996.  The most recent amendment took place in 2018 and was in effect at time of the events in this case.[1]  The 2018 version of this statute provides in relevant part:

---

[1] It continues to remain in effect today.

A person whose operating privilege was disqualified, canceled, recalled, revoked or suspended and not restored or who does not hold a valid driver's license and applicable endorsements for the type and class of vehicle being operated commits an offense under this section if the person was the driver of any vehicle and:

(1) caused an accident resulting in injury or death of a person; or

(2) acted with negligence that contributed to causing the accident resulting in injury or death of a person.

*Id.*

Appellant was charged with and convicted of violating Section 3742.1(a)(1). This provision does not state what *mens rea* the Commonwealth must prove to establish the defendant's guilt. For reasons discussed below, we will assume for purposes of this memorandum that the Commonwealth must prove criminal negligence to establish Appellant's guilt.

To explain, in 2005, this Court construed a prior version of Section 3742.1 to require proof of criminal negligence. ***See Commonwealth v. Hurst,*** 889 A.2d 624, 628-29 (Pa. Super. 2005). At the time we decided **Hurst**, Section 3742.1 provided:

A person whose operating privilege was canceled, recalled, revoked or suspended and not restored or who does not hold a valid driver's license commits an offense under this section if the person was the driver of any vehicle and caused an accident resulting in injury or death of any person.

***Id.***, 889 A.2d at 626. The legislature prescribed that violation of this provision constituted a second-degree misdemeanor except in certain specified circumstances. ***Id.***

- 4 -

We observed that the version of Section 3742.1 then in effect did not state what level of culpability the Commonwealth had to prove. *Id.* at 626. Due to this omission, we wrote, "[W]e find it necessary to determine initially whether [the version of Section 3742.1 then in effect] is an absolute liability statute, thereby exempting the Commonwealth from proving that Appellant acted with any particular *mens rea*." *Id.* at 628. We reasoned that Section 3742.1 required proof of criminal negligence:

> [W]e conclude 75 Pa.C.S.A. § 3742.1 is not an absolute liability statute. Appellant's violation of Section 3742.1 was a misdemeanor of the second degree, and not a summary offense, which was punishable by a maximum penalty of two years in prison. *See* 18 Pa.C.S.A. § 1104. The nature of the offense, which involves a causation element, and the potentially severe penalty are sufficient indicia that the legislature did not intend to eliminate the *mens rea* element and make accidents involving death or personal injury while a driver is not properly licensed a strict liability crime.
>
> Having determined that Section 3742.1 of the motor vehicle code is not an absolute liability statute, we consider Appellant's and the Commonwealth's arguments regarding the necessary mens rea. We conclude that, in the case *sub judice*, 18 Pa.C.S.A. § 302(a) establishes the culpability requirements for a violation of Section 3742.1 of the motor vehicle code, and, therefore, criminal negligence as defined in 18 Pa.C.S.A. § 302(b)(4) is the minimum level of culpability the Commonwealth was required to establish at trial.

*Id.* at 628-29.

The 2018 amendment to Section 3742.1 raises the question as to whether **Hurst** continues to control our construction of Section 3742.1(a)(1). More specifically, the 2018 amendment raises the question whether Section 3742.1(a)(1) is an absolute liability provision instead of a criminal negligence

provision. The 2018 amendment provides that a vehicle driver whose operating privilege is suspended, such as Appellant herein, is liable in two separate situations:

> (1) [he] "caused an accident resulting in injury or death of a person" (section 3742.1(a)(1)); or

> (2) [he] "**acted with negligence** that contributed to causing the accident resulting in injury or death of a person" (section 3742.1(a)(2) (emphasis added)).

*Id.* The inclusion of negligence text within Section 3742.1(a)(2), and the absence of any text relating to *mens rea* in Section 3742.1(a)(1), suggests that the legislature did not intend Section 3742.1(a)(1) to require proof of criminal negligence and instead intended Section 3742.1(a)(1) to be an absolute liability provision, *i.e.*, a provision that does not require proof that the defendant acted with any particular *mens rea*. **See Fonner v. Shandon, Inc.**, 555 Pa. 370, 724 A.2d 903, 907 (1999) (where "unless" language was in one section of Workers' Compensation Act but not in second section, legislature had different intent in drafting second section; "where a section of a statute contains a given provision, the omission of such a provision from a similar section is significant to show a different legislative intent").

Although it would seem the 2018 version of Section 3742.1(a)(1) is now an absolute liability provision, we need not resolve that definitively in this

appeal, as we conclude in any event there was sufficient evidence of criminal negligence here to sustain Appellant's conviction under Section 3742.1(a)(1).

The Crimes Code defines the element of negligence as follows:

A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(4).

Our decision in **Commonwealth v. Cheatham**, 615 A.2d 802 (Pa. Super. 1992), provides helpful analysis on criminal negligence standards and their application to the evidence. **Cheatham** addressed whether a driver's action of driving despite knowing that he had a diagnosed seizure disorder provided the requisite *mens rea* where the defendant was charged with vehicular homicide. We first reviewed our Supreme Court's decision in **Commonwealth v. Heck**, 517 Pa. 192, 535 A.2d 575 (1985), which held that a homicide by vehicle statute that imposed criminal liability for an act of simple negligence denied the defendant due process of law. We continued:

The Pennsylvania Supreme Court rehabilitated the [homicide by vehicle] statute by adding a *mens rea* requirement to what is, on its face, a strict liability statute. **Heck**, 517 Pa. at 200, 535 A.2d at 579. The court held that "ordinary negligence will not sustain a conviction for the offense of homicide by vehicle. The applicable *mens rea* requirements of culpability are those enumerated in 18 Pa.C.S. § 302(a)." **Id.** Section 302(a) establishes four degrees of culpability: "intentionally, knowingly, recklessly or negligently as the law may require, with respect to each material element of

- 7 -

the offense." 18 Pa.C.S. § 302(a). "Negligently" is intended to be criminal negligence which is defined as "a gross deviation from the standard of care that a reasonable person would observe." **Heck**, 517 Pa. at 201, 535 A.2d at 580.

**Cheatham**, 615 A.2d at 806. We then held that the driver's conduct demonstrated "a gross deviation from the standard of care":

> An epileptic seizure while driving and an ensuing fatal accident is an example law school textbooks use to distinguish cases in which there is no criminal culpability from those in which there is criminal responsibility. **See** S. Kadish and S. Schulhofer, Criminal Law and its Processes, p. 195 (Little, Brown and Co. 1989). The case most often cited is **People v. Decina**, 2 N.Y.2d 133, 157 N.Y.S.2d 558, 138 N.E.2d 799 (1956). In that case, Decina killed four children when he lost control of his car during an epileptic seizure. The question before the **Decina** court was whether the evidence was sufficient to indict. Decina argued the state had no evidence of the mens rea required to indict for involuntary manslaughter. The New York court held that, assuming the truth of the indictment as it must on demurrer, Decina knew he was subject to epileptic seizures. That knowledge and the choice to drive, the court said, amounted to culpable negligence. The court distinguished Decina's behavior from that of a person for whom the seizure was unexpected. An unexpected attack, the court reasoned, is altogether different, suggesting a lack of criminal culpability. **Cf. Malcolm v. Patrick**, 147 So.2d 188, cert. denied 148 So.2d 278 (Fla.App.Div.1962) (tort liability depends on foreknowledge of epilepsy).
>
> The defining difference between the epileptic who drives with the knowledge that he or she is seizure prone and the unsuspecting epileptic who drives is choice.[8] One chooses to take the risk; the other does not know he is taking the risk. The Pennsylvania Supreme Court defined criminal culpability in terms of choice in **Commonwealth v. Hicks**, 502 Pa. 344, 466 A.2d 613 (1983), as pertaining to drivers who know or should know that death is a probable consequence of their violations of the Motor Vehicle Code and who "should reasonably anticipate that their conduct is likely to produce death."

[8] Choice is the defining element of intent. B. Cardozo, *What Medicine Can Do for Law*, Law and Literature and other Essays and Addresses 99-100 (1931).

> In this case, Cheatham knew the frequency of his seizures even with medication, he knew that he had not had medical attention for three months, he knew that his seizures came on without warning, and he knew that the Commonwealth of Pennsylvania required that he be seizure-free for one year before being licensed to drive. Despite that knowledge, Cheatham chose to drive. That choice to drive raises Cheatham's conduct to the level of a gross deviation from the standard of care that a reasonable person would observe. 18 Pa.C.S.[A.] § 302(a); **Heck**, **supra**.

*Id.* at 806-07.

Like the defendant's conduct in **Cheatham**, Appellant's conduct herein constitutes criminal negligence. Construed in the light most favorable to the Commonwealth, the evidence demonstrates that Appellant knew (1) he had six or seven prior seizure events in the past, (2) he had never been diagnosed (and therefore had never seen a physician) for his seizures, and (3) the last seizure took place only six months before this accident. In spite of this knowledge, Appellant chose to drive his car on the date of the accident. Thus, to paraphrase the Crimes Code, Appellant "[should have been] aware of a substantial and unjustifiable risk that a material element [of Section 3742.1(a)(1) would] result from his conduct"—specifically, that his conduct would "cause[] an accident resulting in injury … of a person." 18 Pa.C.S.A. § 302(b)(4). This risk was "of such a nature and degree" that "[Appellant's] failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involve[d] a gross deviation from the standard of care that a reasonable person would observe in [Appellant's] situation." *Id.*

We agree with the Commonwealth that instead of seeking diagnosis or treatment, Appellant "[hid his] head in the sand [despite being on] notice that he [was] suffering a serious medical condition[,] the opposite of acting in conformity with [his] duty of care." Commonwealth's Brief at 11.

Appellant contends that a transportation regulation, 67 Pa. Code § 83.4(a), "only requires a person to be seizure free for six months." Appellant's Brief at 14. Therefore, Appellant concludes, he had the right to drive because he had been seizure free for six months. Section 83.4(a) provides, "A person who has a seizure disorder will not be qualified to drive unless a licensed physician reports that the person has been free from seizure for at least 6 months immediately preceding, with or without medication. A person will not be disqualified if the person has experienced only auras during that period." There is no evidence of record that a licensed physician reported that Appellant was seizure free for at least six months immediately preceding the accident. Indeed, as stated above, the evidence demonstrates that Appellant never had his seizure disorder diagnosed, let alone treated. Thus, this regulation does not provide any protection to Appellant.

Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

2/26/2026